IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DANIEL SHAW,                        )
                                    )
            Plaintiff,              )
                                    )
    v.                              )  Civ. Action No. 08-421-GMS
                                    )
MAJOR PARKER and C/O LEVAN,         )
                                    )
            Defendants.             )

## MEMORANDUM

## I. INTRODUCTION

The plaintiff, Daniel Shaw ("Shaw"), a former inmate at the Howard R. Young

Correctional Center ("HRYCI"), Wilmington, Delaware filed this lawsuit pursuant to 42 U.S.C.

§ 1983 alleging violations of his constitutional rights. He proceeds *pro se* and has been granted

leave to proceed without prepayment of fees. Before the court is the defendants' motion for

summary judgment and Shaw's opposition thereto. (D.I. 51, 52, 53.) For the reasons that follow,

the court will grant the motion for summary judgment.

## II. BACKGROUND

Shaw filed his complaint on July 8, 2009. (D.I. 2.) The court dismissed the claims in the

original complaint raised against Warden Phil Morgan and Commissioner Carl Danberg and

allowed Shaw to proceed against the defendants Major Parker ("Parker") and C/O Levan

("Levan") (together "the defendants") on First Amendment claims that they confiscated his

rosary. (*See* D.I. 9.) Thereafter, Shaw filed an amended complaint and added C/O Cannon

("Cannon"), C/O Kadow ("Kadow"), and Richard Kearney ("Kearney") as defendants and raised

additional claims. (D.I. 12.) The court dismissed Cannon, Kadow, and Kearney and the claims

that: (1) Shaw was refused the right to a higher education because he was not allowed to attend bible college; (2) the grievance process is inadequate; (3) he was deprived his personal property; and (4) retaliation occurred as a result of the grievances he filed. (D.I. 15.) Shaw was allowed to proceed against Parker and Levan on his First Amendment claims.

Parker and Levan answered the amended complaint and admitted that corrections officers were directed to take rosary beads from inmates for safety reasons and denied that Shaw was denied the right to practice his religion. (D.I. 26, ¶ 1.) On April 19, 2010, Shaw filed an amended complaint, without leave of court, construed as a motion for leave to amend. (*See* D.I. 37.) On February 8, 2011, the court granted the motion for leave to amend and gave Shaw fourteen days from the date of the order to file an amended complaint. (D.I. 55.) He failed to do so. Accordingly, the case proceeds on the amended complaint found at Docket Item 12 and Shaw's claims that Parker and Levan violated his First Amendment right to the free exercise of religion when his rosary beads were confiscated on May 29, 2008 and July 2, 2008. (D.I. 12.)

Shaw submitted two grievances. The first grievance, dated May 29, 2008, complains that rosary beads were taken on the same date because of security concerns, even though other items inmates were allowed to possess could be viewed as security concerns. (D.I. 38 at 21A.) The matter was resolved on June 27, 2008 when Warden Morgan authorized the return of the rosary beads. (*Id.*) The May 29, 2008 grievance states that rosaries have to be the "break-away" kind and are the only type allowed to enter the facility. (*Id.*) The second grievance, dated July 2, 2008, complains that Levan took Shaw's rosary beads upon the direction of Parker even though Warden Morgan had authorized their return and the rosary beads could not be used to harm anyone. (*Id.* at 24A.) The grievance was designated "non-grievable." (*Id.*)

2

According to Levan, on or about May 29, 2008, a security team performing routine searches of offenders' cells removed Shaw's rosary beads. (D.I. 51, Levan aff.) Levan was not part of the security team, and he did not confiscate any rosary beads. (*Id.*) According to Parker, on or about May 29, 2008, the security team discovered rosary beads in several offenders' cells. (D.I. 51, Parker aff.) Parker understood that the rosary beads were distributed by a visiting priest who failed to gain prior approval from the HRYCI. (*Id.*) Parker determined that, because of the strength of the cord, the rosary beads posed a security threat, and Parker ordered the security team to confiscate the rosary beads. (*Id.*) Neither Levan, nor Parker, address the second taking of Shaw's rosary beads on July 2, 2008.

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[1]Rule 56 was revised by amendment effective December 1, 2010. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989).  Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c) (1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'").  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

The defendants move for summary judgment as to the May 29, 2008 incident on the grounds that:  (1) Shaw did not establish the requisite personal involvement of Levan; (2) they are immune from liability in their official capacities; and (3) they are entitled to qualified

immunity. The defendants did not move for summary judgment regarding the July 2, 2008 incident.

## IV. DISCUSSION

### A. Personal Involvement

The defendants seek summary judgment on behalf of Levan on the grounds that he lacks the requisite personal involvement necessary for a § 1983 claim. Shaw acknowledges this his rosary beads were taken by the security team on May 29, 2008, but that his rosary was returned only to have Levan take them on July 2, 2008.

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The evidence of record does not reflect Levan's personal involvement with regard to Shaw's claim that his rosary beads were confiscated on or May 29, 2008. Accordingly, summary judgment is appropriate on behalf of Shaw as to the May 29, 2008 claim.

### B. Eleventh Amendment

The defendants seek summary judgment with regard to the official capacity claims that seek monetary damages. The Eleventh Amendment shields states from suits by individuals absent a state's consent. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "[A] suit

against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). Thus, § 1983 claims for monetary damages against a state or a state official in his official capacity are barred by the Eleventh Amendment. *See id.* The State has not waived its immunity from suit in federal court, and although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007) (not published).

Accordingly sovereign immunity applies, and summary judgment is appropriate as to this issue. For the above reasons, the court will grant the defendants' motion for summary judgment as to the official capacity claims that seek monetary damages.

## C. First Amendment

Parker moves for summary judgment on the grounds that he determined that the rosary beads confiscated by the security team on May 29, 2008, and that had been distributed by a visiting priest, posed a security threat. Shaw responds that the rosary is an important part of the Catholic religion and, when his rosary was confiscated, he was denied the ability to practice his religion.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Prisoners do not forfeit this right by reason of their conviction and confinement in prison, but the right is limited. *See DeHart v. Horn*, 227 F.3d 47, 50-51 (3d Cir. 2000). To establish a violation of the Free Exercise Clause, Shaw must show that he was prevented from engaging in his

religion without any justification reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine whether a restriction is reasonably related to legitimate penological interests, the court weighs four factors: (1) there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether inmates retain an alternative means of exercising the circumscribed right; (3) the costs that accommodating the right would impose on other inmates, guards, and prison resources generally; and (4) whether there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *See DeHart*, 227 F.3d at 51.

The evidence of record does not demonstrate a violation of Shaw's free exercise rights with regard to the May 29, 2008 taking of his rosary beads. Parker determined that the rosary beads posed a security threat because of the strength of the cord. The prison's interest in maintaining a safe and secure institution for inmates and prison personnel is paramount. Moreover, inmates are not totally precluded from possessing rosary beads, and may possess "break-away" rosary beads. In light of the foregoing, the court concludes that the prison has a legitimate interest in maintaining a safe and secure institution and those interests are rationally connected to the institutional policy that inmates cannot possess rosary beads unless they are the "break-away" type.

For the above reasons, the court will grant the motion for summary judgment as to the May 29, 2008 claim.

## V. CONCLUSION

For the above reasons, the court will grant the defendants' motion for summary judgment

with regard to the May 29, 2008 incident.  The July 2, 2008 First Amendment claim for the

taking of rosary beads is the only claim that remains.  In addition, Shaw has not participated in

the litigation since November 4, 2010, and he will be ordered to show cause why this case should

not be dismissed for failure to prosecute, pursuant to D. Del. LR 41.1.

An appropriate order will be issued.

CHIEF, UNITED STATES DISTRICT JUDGE

Dec 27 , 2011

Wilmington, Delaware